UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RACHEL FREEDMAN, and<br>JEFFREY GREENBERG, *individually and on behalf of all others similarly situated*<br><br>    Plaintiffs,<br><br>v.<br><br>DAN O'BRIEN KIA NORWOOD,<br>DMO NORWOOD, LLC, and<br>DAN O'BRIEN AUTO GROUP<br><br>    Defendants. | Civil Action No. 1:20-cv-11369-RWZ |

## DEFENDANTS' OPPOSITION TO MOTION TO REMAND

Defendants Dan O'Brien Kia Norwood, DMO Norwood, LLC, and Dan O'Brien Auto Group (collectively "DMO" or the "Defendants") hereby oppose the Motion to Remand filed by the Plaintiffs, Rachel Freedman and Jeffrey Greenberg. The grounds for this opposition are set forth more fully below.

### I. DMO's Removal was Timely

The Plaintiffs' argument that DMO's removal was untimely is based on a mischaracterization of the relevant history and a misunderstanding of the legal principles governing the timing of removals. While it is true counsel had communications about whether DMO would accept service of the Complaint, Plaintiffs' Counsel omits key details from those communications that place the onus squarely on him for any delays about which he now complains.

At 8:00 p.m. on May 28, 2020, Plaintiffs' Counsel first contacted DMO's Counsel to let him know a Complaint had been filed earlier that day. Ex. A to Memorandum in Support of Mot. to Remand [Dkt. Doc. No. 16-1]. Five minutes later, DMO's Counsel responded

that he would "inquire about accepting service . . . ." *Id.* Plaintiffs' Counsel responded that he appreciated "the prompt reply . . . ." *Id.* He also noted he "did not yet have the summonses . . .", but "[o]nce received, I can upload those [to the docket]." *Id.* The next day (May 29, 2020), DMO's Counsel followed up with Plaintiffs' Counsel to tell him "DMO will accept service if you will permit us 45 days to file an answer or other responsive pleading." Ex. B to Memorandum in Support of Mot. to Remand [Dkt. Doc. No. 16-2]. Several days later, having not heard back from Plaintiffs' Counsel, DMO's Counsel reached out again. The resulting emails were *excluded* by the Plaintiffs from their Motion to Remand.

DMO's Counsel started the conversation on June 3, 2020. He noted he had not received a response to his last email, to which Plaintiffs' Counsel replied:

> Sorry, this fell through the cracks. Yes, take as much time as you need. If July 23rd works for you, then I will mark that in my calendar. I am going to send you an affidavit of counsel accepting service, and we can get something on file. I should get that to you tomorrow.

Email Between Counsel, dated June 3, 2020, attached as **Exhibit 1**. DMO's Counsel responded within the hour: "No problem. Thank you. I will look out for the affidavit of service." *Id.* Notwithstanding Plaintiffs' Counsel's representation that the affidavit of service would be coming the following day, DMO's Counsel did not hear *anything* further from him until June 26, 2020. At that time, Plaintiffs' Counsel sent a draft affidavit accepting service, and he also sent – for the first time – the summonses, which had not been prepared and dated until that very same day. *See* Ex. C to Memorandum in Support of Mot. to Remand [Dkt. Doc. No. 16-3].[1] This was the first time DMO's Counsel had seen these documents.

---

[1] In their motion, the Plaintiffs fail to mention they had not even prepared the summonses until June 26th. *See* Copies of Summonses, dated June 26, 2020, attached as **Exhibit 2**.

The next business day, June 29, 2020, DMO's Counsel returned the affidavit accepting service. *See* Email Between Counsel, dated June 29, 2020, attached as **Exhibit 3.** He explained he had edited the affidavit slightly to reflect that two of the three named parties were just trade names and not actual entities. *Id.* He also added: "We will cooperate with you in getting the correct parties named, I just don't want to waive anything accepting service." *Id.* Plaintiffs' counsel responded: "This is fine." *Id.* Consistent with all the communications between counsel, the affidavit made clear that DMO's Counsel was accepting service of the Complaint, Summonses and other opening documents in the case on behalf of DMO as of that date, June 26th. *See* Affidavit of Edward Sackman, Esq., dated June 26, 2020, attached as **Exhibit 4**, at ¶1 ("I *accept service* for those entities . . . .") (emphasis added). The affidavit also referred to the parties' agreement that DMO's deadline to "answer or otherwise respond" to the Complaint was extended to July 21, 2020, "with all rights being reserved by the defendants." Ex. 4, ¶ 4.[2]

Looking at the complete history of communications between counsel, a few things are clear. First, DMO's Counsel agreed to *accept* service, not waive it. Not once in the communications between counsel was there ever any discussion that DMO would waive the step of formal service as the means of bringing it into the action. Indeed, that is why Plaintiffs' Counsel's very first statement on the subject was: "I am going to send you an affidavit of counsel accepting service, and we can get something on file." Ex. 1. There is no other reasonable explanation for this statement, or the rest of counsels' communications, other than that both parties understood DMO would need to be served, and the means by which that would happen was the affidavit of acceptance of service by DMO's Counsel.

---

[2] Neither the affidavit of acceptance nor counsels' email exchange of June 29, 2020 were included by the Plaintiffs with their motion.

Second, DMO was appropriately relying on Plaintiffs' Counsel to send the affidavit of acceptance, as he said he would do, but it took until June 26th for him to send it. The responsibility for this delay rests squarely with Plaintiffs' Counsel. Third, the summonses – the operative documents that subjected DMO to the authority of the court – did not even come into being until June 26th. Prior to that time, there literally were no summonses that could have been served by the Plaintiffs or accepted by DMO's Counsel. The responsibility for this delay also rests with Plaintiffs' Counsel. Fourth, when Plaintiffs' Counsel eventually did send the affidavit of acceptance to DMO's Counsel, he turned it around almost immediately and made no effort to manipulate the timing of his acceptance. Fifth, and finally, DMO's Counsel made clear in the affidavit of acceptance that DMO was reserving all its rights, and it removed the case by July 21st, which was within the response timeframe to which the parties had agreed.

Faced with these facts, the Plaintiffs resort to a strained and incorrect reading of the law. They argue that the date on which Plaintiffs' Counsel sent the Complaint to DMO's Counsel, May 28, 2020, is the date that started the removal clock under 28 U.S.C. § 1446(b)(1). Memo. in Support of Mot. to Remand [Dkt. Doc. No. 16], at 5-6 ("Here, the Complaint was sent to DMO's counsel on May 28, 2020. Pursuant to § 1446, May 28th is the date that starts the removal clock."). This clearly is wrong in light of the Supreme Court's holding in *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999). There, the plaintiff filed a complaint and faxed a courtesy copy to the defendant but did not make service until about two weeks later. *Id.* at 348. The plaintiff argued the defendant's receipt of the faxed complaint started the removal clock under § 1446(b). *Id.* The Supreme Court rejected this argument, which was based on the same reading of the statute now being advanced by the

4

Plaintiffs. The Court noted that "one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* at 350. Accordingly, "if the complaint is filed in court prior to any service, the removal period runs from the service of the summons." *Id.* at 354. This now is black-letter law for interpreting the timing requirements in § 1446(b). *See, e.g., Novak v. Bank of New York Mellon Trust Co.*, 783 F.3d 910, 911 (1st Cir. 2015) ("the Supreme Court has held that a defendant's statutory period to remove does not begin to run . . . until the defendant has been served.") (*citing Murphy Bros.*); *Sutler v. Redland Ins. Co.*, 2012 WL 5240124, * 2, n. 4 (D. Mass. 2012) (Zobel, J.) (*citing Murphy Bros.* for the proposition that "mere receipt of the complaint unattended by any formal service" does not trigger a defendant's time for removal).[3]

In light of the Supreme Court's holding in *Murphy Bros.*, the Plaintiffs' assertion that "it is the date of receipt of the Complaint, not the date acceptance [of service] occurred, that triggers the removal clock . . .," Memo. in Support of Mot. to Remand [Dkt. Doc. No. 16], at 6, misstates the law. It is not seriously contestable that the removal clock did not begin to run until DMO was served. In response, the Plaintiffs have two fallback positions, neither of which has merit. First, they argue the email by DMO's Counsel on May 29, 2020, indicating that DMO would accept service, in fact constituted service. Memo. in Support of

---

[3] The Plaintiffs' reliance on *New World Technologies, Inc. v. Comy Technology, Inc.*, 876 F. Supp 6 (D. Mass. 1995), *see* Memo. in Support of Mot. to Remand [Dkt. Doc. No. 16], at 6-7, is misplaced. In that case, which was decided before *Murphy Bros.*, the court held the removal clock began to run upon the defendant's mere receipt of the complaint, not from the time it was served. *New World Technologies*, 876 F. Supp. at 7-8. That approach clearly was rejected by the Supreme Court in *Murphy Bros.* The Plaintiffs' pronouncement that "[t]he holding in *New World Technologies* has consistently been adopted by this Court") *see* Memo. in Support of Mot. to Remand [Dkt. Doc. No. 16], at 7, simply is wrong for the period of time since *Murphy Bros.* was decided in 1999.

5

Mot. to Remand [Dkt. Doc. No. 16], at 6 ("[B]y e-mail dated May 29, 2020, counsel for DMO accepted service."). This clearly is wrong. The statement by DMO's Counsel in that email only was that "DMO *will accept* service . . .," and Plaintiffs' Counsel responded that he would "send . . . an affidavit of counsel accepting service . . . ." Ex. 1 (emphasis added). If the May 29th email truly had accepted service as the Plaintiffs now claim, there would have been no reason to send subsequent service papers. When the affidavit finally came on June 26th, along with the summonses, DMO's Counsel signed it promptly and stated for the first time: "I accept service [for the Defendants]." Ex. 4, ¶1. That was the point at which service occurred and the removal clock began to run. The Plaintiffs' construction of events ignores reality.

Second, the Plaintiffs try to take this case outside the scope of the rule in *Murphy Bros.* by suggesting that the agreement by DMO's Counsel to accept service was in effect a waiver of service. Memo. in Support of Mot. to Remand [Dkt. Doc. No. 16], at 7, n. 4 ("In fact, the [*Murphy Bros.*] decision states that it does not apply to situations where the defendants waived service."). This strains credulity. As demonstrated above, it is crystal clear that DMO's Counsel agreed to *accept* service, not waive it. *Cf. Evans v. New Prime, Inc.*, 2014 WL 12796263, *3, n. 3 (D. Mass. 2014) (denying a motion to remand and rejecting the argument that defense counsel's mere agreement to accept service amounted to a waiver of service). The Plaintiffs' waiver argument is made up out of whole cloth.

## II. The $5 Million Amount-in-Controversy Threshold is Satisfied

The Plaintiffs argue DMO has failed to provide "any information" to support its allegation that the amount in controversy in this case exceeds $5 million as required by § 1332(d)(2) of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d) and

6

1453. Memo. in Support of Mot. to Remand [Dkt. Doc. No. 16], at 8. However, as the Plaintiffs point out, the source of information cited by DMO in its Notice of Removal are statements *they made* to this Court through their counsel. They allege: (1) They believe there are "thousands of Class members," Compl. ¶ 55; (2) "All Class members were similarly injured . . . and all Class members have the same claim," Compl. ¶ 57; and (3) they were overcharged $5,597.69 by DMO. Compl. ¶¶ 12-13. In addition, in a Chapter 93A Demand Letter sent by the Plaintiffs to DMO, which they reference and rely upon in their Complaint, *see* ¶ 80, they provided a calculation of class-wide damages in excess of $31,348,000. *Letter of Joshua N. Garick, Esq.*, dated April 13, 2020, at 6, n. 9, attached as Exhibit D to Defendants' Notice of Removal. Using this information – the Plaintiffs' own statements – DMO demonstrated that with as few as 2,000 Class members, the amount in controversy would be at least $11,195,380 for the Class.[4]

Presumably, the Plaintiffs' factual contentions have evidentiary support. *See, e.g.,* Fed. R. Civ. P. 11(b)(3) (by presenting a pleading to the Court, an attorney certifies that "the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .") But in order to suit the exigencies of the moment, they make the strange argument that their own figures are "not realistic values" and merely represent their "rank speculation."

---

[4] This is a conservative calculation using the Plaintiffs' figures. It is based on multiplying 2,000 Class members by $5,597.69, the amount by which the Plaintiffs claim they were overcharged by DMO. The damages claimed by the Plaintiffs in their Chapter 93A Demand Letter actually were much higher on a per-member basis, at $15,674. Ex. D to Defendants' Notice of Removal, at 6, n. 9. DMO's calculation also does not include trebling under Ch. 93A, which may be included in the jurisdictional minimum calculation under CAFA. *Baker v. Equity Residential Management, LLC*, 996 F.Supp.2d 1, 7 (D. Mass. 2014). If the Plaintiffs' damages are trebled to $16,793.07 ($5,597.69 x 3), it would take only 298 Class members to reach the $5,000,000 CAFA threshold.

7

Memo. in Support of Mot. to Remand [Dkt. Doc. No. 16], at 8-9. It would be one thing for the Plaintiffs to try to discredit information generated by DMO in an effort to avoid jurisdiction in this Court, but when that information comes from the Plaintiffs themselves, their position simply is not credible. They should not be able to label DMO's showing as speculative when it is based on information they have certified themselves to be true. *Cf. Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009) (when a plaintiff challenges the amount in controversy under a CAFA removal, "[m]erely labeling the defendant's showing as 'speculative' without discrediting the facts upon which it rests is insufficient.") (citation omitted). Allegations made by parties in court proceedings should not be subject to this type of misuse and abuse.

While DMO believes the figures it presented in its Motion to Remand are sufficient to show a reasonable probability that more than $5 million was in controversy at the time of removal, it has consulted its records and determined the number of members in the Class as defined by the Plaintiffs, which consists of: "All consumers who purchased an automobile from any Dan O'Brien Auto Group dealership in Massachusetts from April 13, 2014 to the present." Compl. ¶53. Within the time between April 13, 2014 and May 28, 2020[5], there were 3,357 consumers who purchased automobiles from DMO. Declaration of Thomas Kuhn, dated August 31, 2020 ("Kuhn Decl.") attached as **Exhibit 5**. Using this figure, along with the Plaintiffs' allegations that (1) they were overcharged $5,597.69, and (2) all Class members were similarly injured and have the same claim, *see* Compl. ¶¶ 12-13; 57, the resulting aggregate damages would be $18,791,445.30 for the Class, exclusive of trebling under Ch, 93A. Using either this figure or the Plaintiffs' demand contained in their Chapter

---

[5] This was the date the Plaintiffs filed their original Complaint, which is the subject of DMO's Notice of Removal.

93A Demand Letter ($31,348,000), the $5 million amount in controversy requirement under CAFA is satisfied.[6]

### III. The Plaintiffs Have Not Met Their Burden on the Local Controversy or Home State Exceptions

At the close of their memorandum in support of their Motion to Remand, the Plaintiffs make a cursory argument that the Court should apply one or both of the local controversy and home state exceptions to negate jurisdiction under CAFA. Memo. in Support of Mot. to Remand [Dkt. Doc. No. 16], at 9 (*citing* 28 U.S.C. §§ 1332(d)(4)(A), (B)). Their position suffers from a complete lack of support and should be rejected.

Under either exception, the Plaintiffs have the burden to demonstrate the existence of the requisite proportion of class members who are citizens of Massachusetts. *McMorris v. TJX Companies, Inc.*, 493 F.Supp.2d 158, 165 (D. Mass. 2007) ("[I]t is the plaintiffs opposing remand who have the burden of demonstrating that two-thirds or more of the proposed class are citizens of Massachusetts."). The Class as alleged by the Plaintiffs consists of: "All consumers who purchased an automobile from any Dan O'Brien Auto Group dealership in Massachusetts from April 13, 2014 to the present." Compl. ¶ 53. The sum total of the Plaintiffs' showing is to say that the "claim is against Massachusetts car dealerships selling cars to Massachusetts residents under Massachusetts law." Memo. in Support of Mot. to Remand [Dkt. Doc. No. 16], at 9. As the Court in *McMorris* made very clear, however, "such a bare assertion cannot sustain the burden of proof." *McMorris*, 493 F.Supp.2d, at 166.

---

[6] The Plaintiffs' assertion that DMO needed to include further evidentiary support in its Notice of Removal, Memo. in Support of Mot. to Remand [Dkt. Doc. No. 16], at 8, misstates the law. *See Dart Cherokee Basin Operating Company, LLC v. Owens*, 574 U.S. 81, 89 (2014) (a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; "evidence establishing the amount is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation.").

There, the plaintiffs tried to invoke the exception by resting on the allegation in their complaint that all the class members were citizens of Massachusetts. *Id.* at 164. Thus, they argued, it was "clear that at least two-thirds . . . of the members of the putative class are citizens of Massachusetts." *Id.* at 165-66. The Court rejected this argument out-of-hand and denied the plaintiffs' motion because they failed to meet their burden of proof. *Id.* at 166.

The Plaintiffs' showing in this case is weaker even than that of the plaintiffs in *McMorris*. Here, the Plaintiffs simply allege that the Class consists of "all consumers" who bought a car from DMO since April 13, 2014. Compl. ¶ 53. The Plaintiffs have not even alleged that the Class members are *residents* of Massachusetts, let alone *citizens*.[7] Even if they had alleged the Class consisted of Massachusetts residents, it would not change anything because "[f]ederal courts . . . consistently have rejected the proposition that mere residence establishes a party's citizenship for the purpose of diversity." *McMorris*, 493 F.Supp.2d, at 162 (*citing Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 53 (1st Cir. 1992)). Citizenship is not equated with residence, but with domicile – the place where an individual "has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *McMorris*, 493 F.Supp.2d, at 162 (*quoting Valentin v. Hospital Bella Vista*, 254 F.3d 358, 366 (1st Cir. 2001)). The Plaintiffs have made no showing that would permit the Court to make a finding as to the proportion of putative Class members in this case who are citizens of Massachusetts. They have left the record bare. Given the clear guidance that this Court provided in *McMorris*, the Plaintiffs' half-hearted attempt to invoke the local

---

[7] The Plaintiffs' statement that their claim involves sales of cars "to Massachusetts residents," Memo. in Support of Mot. to Remand [Dkt. Doc. No. 16], at 9, is not contained anywhere in the Complaint and is inconsistent with their own class definition.

controversy and home state exceptions should be rejected.[8]

## CONCLUSION

For all of the foregoing reasons, Defendants Dan O'Brien Kia Norwood, DMO Norwood, LLC, and Dan O'Brien Auto Group respectfully request that the Plaintiffs' Motion to Remand be denied with prejudice.[9]

---

[8] Numerous courts have applied the same reasoning as *McMorris* and found that plaintiffs had failed to meet their burden of proof on the citizenship of class members. *See, e.g., Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1166 (11th Cir. 2006); *Preston v. Tenet Healthsystem Memorial Medical Center, Inc.*, 485 F.3d 793, 800 (5th Cir. 2007); *Anthony v. Small Tube Manufacturing Corp.*, 535 F.Supp.2d 506, 517 (E.D. Pa. 2007); *Gerstenecker v. Terminix International, Inc.*, 2007 WL 2746847, at *3 (S.D. Ill. 2007); *Musgrave v. Aluminum Co. of America, Inc.*, 2006 WL 1994840, at *2 (S.D. Ind. 2006); *Nichols v. Progressive Direct Ins. Co.*, 2007 WL 1035014, at *3 (E.D. Ky. 2007); *Phillips v. Severn Trent Environmental Services, Inc.*, 2007 WL 2757131, at *3 (E.D. La. 2007); *Schwartz v. Comcast Corp.*, 2006 WL 487915, at *6 (E.D. Pa. 2006).

[9] DMO also opposes the Plaintiffs' argument that they are entitled to an award of fees in the event the Court grants their motion. Memo. in Support of Mot. to Remand [Dkt. Doc. No. 16], at 10. An award of fees under 28 U.S.C. § 1447(c) turns on the reasonableness of the removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). Contrary to the Plaintiffs' assertions, DMO clearly has an objectively reasonable basis to seek removal in this case.

Dated: September 1, 2020

Respectfully submitted,

Attorneys for Defendants
Dan O'Brien Kia Norwood
DMO Norwood, LLC, and
Dan O'Brien Auto Group,

| | |
|---|---|
| /s/ Edward J. Sackman | /s/ Daniel J. Mitchell |
| Edward J. Sackman, Esq. (BBO # 704383) | Daniel J. Mitchell, Esq. (BBO # 675232) |
| Hilary Holmes Rheaume, Esq. | dmitchell@bernsteinshur.com |
| (*pro hac vice*) | |
| nsackman@bernsteinshur.com | |
| hrheaume@bernsteinshur.com | |
| | |
| BERNSTEIN SHUR | BERNSTEIN SHUR |
| 670 N. Commercial St., Suite 108 | 100 Middle Street |
| P.O. Box 1120 | P.O. Box 9279 |
| Manchester, New Hampshire 03105 | Portland, Maine 04104 |
| (603) 623-8700 | (207) 774-1200 |

CERTIFICATE OF SERVICE

       I hereby certify that this document filed through the CM/ECF System will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants on September 1, 2020.

Dated: September 1, 2020                                    /s/ Daniel J. Mitchell
                                                                                   Daniel J. Mitchell